At this time, we'll hear Baidis v. Lynch. Good morning, Honors. Good morning. Joshua Bordavid for Petitioner. Mr. Baidis. This case presents two somewhat distinct issues for review. The first is whether or not the immigration judge properly considered Mr. Baidis' withholding of removal claim with respect to Turkey and Jordan. And the second is whether or not Mr. Baidis gave false testimony for the purposes of obtaining an immigration benefit. In both instances, the immigration judge's analysis wasn't only flawed, it was deficient. That is to say, the judge provided basically no analysis in either instance as to whether or not her conclusions were supported by the record. A review of the record confirms that they were not. Both the Board of Immigration Appeals and the government in their brief with respect to the withholding of removal claim rests entirely on... Turkey and Jordan. He had a lesser connection to those countries. That is correct, yes. That's admitted. Yes, he does have a lesser connection. He was born in Jordan. The immigration judge correctly determined him to be stateless. He is... Withholding to Israel. Then you have these two lesser connected countries. And why isn't the inquiry over there? Because Mr. Baidis expressed concern or fear that he would in fact be deported from those countries back to the country, to Israel, where he was previously tortured and found to have a reasonable fear of torture in the future. Mr. Baidis... Again, the government asserts that Mr. Baidis didn't put the immigration judge on notice, that that was his fear. In fact, throughout the record, well throughout the record, he makes it clear that he was concerned that if returned to either Turkey or Jordan, he would be in fact deported from those countries. Are Turkey and or Jordan signatories to the Convention Against Torture? Turkey is. Jordan is not, Your Honor. So, Turkey would have an obligation not to return, not to send him to a country in which he has a plausible claim that he would be tortured. And his wife lives there with their children. That is correct. However, Your Honor, the record reflects that Turkey does in fact return nationals from the Palestinian Occupied Territories back to the Palestinian Occupied Territories. Yes, but if it's a signatory to the Convention Against Torture, they can't do that. Any more than we can. As a matter of law, they can't. But as a matter of practice, we presented evidence that they would in fact do so. And the concern is not that the immigration judge made the conclusion that Turkey would in fact be bound by the Convention Against Torture. The immigration judge made no findings whatsoever. If that is the finding that the immigration judge would make, then the matter would require remand back to the immigration judge to make those findings in the first instance. But Mr. Bidas didn't actually testify he had this fear of being sent back to Jordan, Turkey, by Jordan or Turkey, and would be tortured. I didn't find that in the testimony. You found that? Yes, Your Honor. Pages 189 to 191 with respect to Turkey. Page 212, he stated the only place that he can go back to is the West Bank. Page 594 to 608, page 612 to 624. He said he was concerned that they would send him to the West Bank. Correct. But I didn't get the idea that he was telling the judge, I'm going to be sent to the West Bank and be tortured. This was part of that discussion about Turkey and Jordan. That is entirely the reason for that discussion, that he's expressing a fear of torture in the West Bank, which the immigration judge found he had. The IJ accepted the proposition that he couldn't go back to, that he would be tortured if he were sent back to Israel. Yes, Your Honor. That is not contested. She found that he, she granted withholding of removal with respect to Israel and the occupied territories, and that was not appealed by DHS, and that matter is final. Give me that side again, where you think he testified that Turkey would send him back to the West Bank. Page 189 to 191, he specifically indicates that he could not reside in Turkey, that they would send him back. He testifies explicitly to that fact. He provides evidence with respect to Jordan on page 594 to 608, and again on 612 to 624. In fact, the cover page of the evidence packet says, evidence relating to respondents' right to return to Jordan, demonstrating that, in fact, he would be sent from Jordan back to the occupied territories, where the immigration judge has concluded that. It's your position that with respect to the advisability of Turkey and Jordan, the IJ was obligated to conclude what? To conclude whether or not sending him back to Turkey and Jordan would result in him having a fear of persecution or torture. The immigration judge gave no analysis whatsoever of the likelihood of his removal from those countries, back to the place where she determined he would be, in fact, tortured. So, returning him… Why is there an obligation? I mean, there's no danger he would be tortured in Turkey, and that was not actually raised. And since it is a country with which he has a lesser connection, including the residence of his wife and his several children, why is the IJ required to figure out what's going to happen to somebody after they achieve a sanctuary in a country in which they will not be persecuted? I think the obligation comes from a statutory obligation. The inadvisability question is contained in 8 U.S.C. 1231b. The withholding of removal issue is contained in 8 U.S.C. 1231c. 1231b deals with the physical removal, when once a person has been ordered removed, where they can be removed to. And, in fact, what the Supreme Court in JAMA said is that they can be removed to not only the countries which have been designated either by the alien or by the immigration judge, but to the list of countries that Your Honor is talking about, which is in 1231b-5, I'm sorry, b-2e. And that is the inadvisability, the list of countries where they have lesser connections and things like that. But then the question of whether or not a person can be… If countries in which they have lesser connections are not feasible, then you can send them anywhere they will take him. Correct. And that's the physical removal. But then we have to get to the question of 1231c, which deals with withholding of removal, which is a mandatory non-discretionary duty not to return an individual to persecution or torture. And that's what the immigration judge got. To a place where they will suffer persecution or torture. Correct. Turkey is not such a place. And the question is then, do you have to say, well, we don't know where the Turkey is going to keep him. Maybe they'll send him somewhere else. I mean, how far into the future does an I.J. have to look or make findings if the I.J. removes him to a country in which he will be safe? All of those, Your Honor, are very valid questions. The problem is the immigration judge made no findings whatsoever. The immigration judge didn't look… My question is, why does the I.J. have to make findings if the I.J. can identify a country to which he can be removed, one where he has a lesser connection and where he will not suffer persecution or torture? Why isn't that enough? That's unfortunately not the question that was resolved by the Board of Immigration Appeals here. What the Board said was that the immigration judge didn't address Turkey and Jordan and was under no obligation to address Turkey and Jordan because the I.J. wasn't appraised of Mr. Bidas' fear of going to those countries which would result in him being removed to the occupied territories. That finding, that basis, which is the reason why his appeal was dismissed, is wholly unsupported by the record. If on remand the Board says, well, the immigration judge had no obligation to consider those countries based upon the statutory analysis, that would be a different question. Why isn't all of this waived? Because he was found to be removable in absentia under the name that he gave, Hasan Gora. In that proceeding, he obviously didn't raise any question about this and he couldn't. Again, Your Honor, the issue of waiver can in fact be waived by the government and that question was also never raised by the government before the immigration judge or before the Board of Immigration Appeals. They never contended that he waived his right to seek withholding or removal from the occupied territories, from Jordan or from Turkey. They never raised that issue because of the in absentia question. In fact, the immigration judge found him to have a well-founded fear or more likely than not fear of persecution or torture in the occupied territories, granted it, and the government didn't appeal it. If you prevail right now and we sent it back, you would not be able to make an argument as to why he will suffer persecution or torture in Turkey, correct? Persecution or torture in Turkey? Correct. Yes, sir. No, I understand what you're arguing.  You reserved some rebuttal. Yes, Your Honor. Yes, you have, sir. Thank you. Good morning. Good morning. May it please the court. I'm Brett Kenney on behalf of the Attorney General. This court should deny the petition for review because substantial evidence supports the agency's conclusion that the petitioner was statutorily ineligible for cancellation of removal as he lacked the requisite good moral character. In addition, the board correctly concluded that the petitioner failed to apply for withholding of removal from Turkey or Jordan. And finally, this court should decline to consider the application of 8 U.S.C. section 1231b2e7 in this case because the agency did not do so in the first instance and was not required to do so. As an initial matter regarding the petitioner's application. I don't have that subsection in my mind at the moment. Which one are you referring to? E-7, Your Honor, which provides that the Attorney General may remove an individual to another country if it's impossible, impracticable, or inadvisable. And regarding the application for withholding of removal, although the petitioner claims that he specifically advised the immigration judge that he feared that Turkey and Jordan would in fact remove him specifically to Israel, there is no evidence in the record to that effect. Instead, he claimed that he would not be able to have permanent residence in those countries, but he made no allegation that those countries would in fact remove him specifically to Israel and the occupied territories. And there is no evidence that that is in fact how those countries would apply. Am I correct that he can't be removed to any country that doesn't give him travel papers? Yes, Your Honor. So I'm not sure I know why Jordan, for example, would give him travel papers if all they want to do is expel him. Or Turkey for that matter either. That is a matter of when the Department of Homeland Security goes to execute the removal order. But at Stage 3 of the country selection process, which is the country of lesser connection, the government need not obtain the consent of... So we don't know whether Turkey or Jordan has consented to receive this person. Correct, Your Honor. And there is no requirement that any acceptance be acquired beforehand or even up to the point of removing the individual to the country's border. I understand that the JAMA case basically says if you have a lesser connected country, you do not have to make this inquiry as to whether they will accept. But I'm wondering if you have information that they will not accept, how does that play in? Just because JAMA says you don't have to inquire, if you had information, then does that change things? I mean, I don't think JAMA doesn't really cover that. As the Supreme Court indicated in JAMA, non-acceptance may well be a factor that the Attorney General considers in determining if removal to a selected country is inadvisable or impracticable. But it by no means has any dispositive effect. And it's left to the discretion of the executive branch officials to determine the effect of non-acceptance. And that accords with the traditional policy of affording broad deference to the President in matters of foreign affairs and the conduct of the nation's foreign relations. That broad judgment also allows the Attorney General and the executive branch to take into consideration changing political and economic circumstances as well as practical and geopolitical concerns. As I understand the testimony, his testimony was basically that he would not have citizenship or permanent residence in Jordan or Turkey, right? Correct. And that was the essence of the—so we don't know how long they would let him stay or not stay. That's not in this record. He did testify that he would be allowed to stay for one to two months in Turkey, I believe. In Turkey, right. Yes, but— But he can get these five-year travel documents from Jordan, and we don't know how long they allow them to be renewed or not renewed. That's not in— Correct, Your Honor. And there is no evidence, if the petitioner were to seek to avail himself of any sort of relief or protection from removal in those countries, how those countries would enforce their laws. And accordingly, the board correctly concluded that— Do we have a record of what those laws are, let alone how they would be enforced? But as I read the record, the I.J. accepted the proposition that he would be unable to stay permanently in either Turkey or Jordan. The I.J. didn't ask him whether the only place he could then go would be Israel. He testified yes. So we have a gap because the I.J., as I read the record, never—there's no indication that the I.J. ever appreciated the significance of this dilemma, much less reached any conclusions about it. It just skipped over. As an initial matter, Your Honor, the immigration judge asked counsel if the only place that he could go was Turkey or the West Bank, to which counsel responded yes, and that was at the March 24, 2010, hearing on page 212 of the administrative record. And it's not entirely clear what the immigration judge was asking at that point, because as the immigration judge's subsequent decision shows, she did select other countries of removal, and properly did so under subsection— Jordan? And that was correctly—and as the petitioner concedes, that was a correct designation. And at step 3 of the country removal process, as described by the Supreme Court, that was the only inquiry which need be made. And accordingly, the advisability of removal to those countries should not be considered by this court in the first instance, and this court need not remand to the agency to make that determination because it was not statutorily required. In addition, if the petitioner failed to advise the immigration judge that he had— I'm losing track here. What finding is not statutorily required? There is no finding that removal to— You're saying there's no finding. I'm saying what finding is not statutorily required? A finding as to the advisability of removal to a country selected under step 3 of the country selection process. The statute does not impose any requirement that the immigration judge first consider the advisability. Even after it was raised? I'm sorry? I thought we were sitting here in step 2, which is lesser connection. It is lesser connection, Your Honor. As the Supreme Court framed it, step 1 is the designation, removal to the country that the petitioner designates, and step 2 is the country of which the— Lesser connection, and the third would be— Step 2 is the connection, the third is the lesser connection, and then step 4 is— You just said no finding is statutorily required. Yes. Just to follow up on earlier lines of questioning, what if the issue is raised that removal to country A will entail removal to country B where a person would be subject to torture? Then the immigration judge could consider whether that raised a sufficient claim for asylum or withholding of removal, but the petitioner does not have any right to raise a claim that removal to a country is inadvisable, because subsection 7 empowers the Attorney General and the Department of Homeland Security to move on from the lesser connection step to removal to any country that will accept the individual, and that is a grant of power to the Attorney General and the Department of Homeland Security in accordance with the traditional policy of deference to the executive branch in conducting the nation's foreign affairs. Well, once the petitioner testified that the only place he can go back to is the West Bank, did the government controvert that in any way? No, Your Honor. There was just counsel's statement that, yes, that was the only place that he could go to. The immigration judge also said that he's been in a Western country for 30 years, and the only place he can go back to is the West Bank, right? And so it's not clear what analysis the immigration judge may have been referring to in that case, but regardless, the board correctly concluded that the petitioner did not raise a claim for withholding of removal from either Turkey or Jordan, because there was no evidence about any past harm or future persecution in either of those countries. And unless this court has any further questions— It was clear from the record he couldn't—the petitioner did establish he couldn't stay in either of those countries. The petitioner did provide testimony that he could not do so, and the immigration judge did not make any explicit finding— Did the government controvert that? No, Your Honor. The government— And the immigration judge made no findings. Right, Your Honor, because the issue was not before the immigration judge, as there was no claim for withholding of removal to either of those countries. Thank you. Thank you. Thank you. What do you say about that, counsel? Your Honor, to start with the preposition that the actual application for withholding of removal, Form I-589, doesn't specify, doesn't provide an opportunity, doesn't ask, what countries are you seeking withholding of removal from? Page 234, Question 1B, in Section B of the 589, the only relevant question is, have you experienced or do you fear mistreatment or harm in, quote, your home country? That's the only question provided on the form. So it's left to the respondent to develop the record, and it's unclear how he could have further developed the record in order to express his fear of return to Jordan and Turkey that it would result in him being returned to the West Bank. The immigration judge asked me whether or not the only place he could go was the West Bank, and I responded yes. We provided background evidence showing that— But that's not testimony. Correct, Your Honor, but he did testify that he had no right to remain in Jordan or Turkey. Isn't that a legal conclusion? Whether or not—yes, and the issue— What is his qualification? Well, he's presenting testimony of his understanding of the immigration procedures in Jordan and Turkey, and we've presented background information relating to what—the right of individuals to reside in Jordan and Turkey. And the key is the immigration judge didn't consider this evidence and then reject it. The immigration judge didn't mention this issue, didn't discuss this issue. Literally not a word was said in the immigration— Maybe the immigration judge thought that the only thing that was required to be decided is whether there are countries to which this person can be removed in which there is no showing that that person would suffer either persecution or torture. But that wasn't the basis that the immigration judge's decision was upheld on. The basis was—what the Board of Immigration Appeals said was that the immigration judge wasn't appraised of these issues, and that's the question before the court, is whether or not that is a correct determination. And we would submit, based upon page 212 of the record where I'm asked, where— Well, suppose that I.J. was appraised of it. Couldn't—wouldn't the I.J. obviously conclude that he does not face persecution or torture in Turkey or in Jordan? And the immigration judge would also have to consider his fear of being returned from— Why? Because that was the fear that was expressed. And at the very least, it would need to be considered and rejected. If the immigration judge said that's not a statutory basis to obtain, withholding, or removal, that would be one finding, and that would be a different question for this court. But again, that's not— But Turkey is a signatory to the Convention Against Torture. Why is—what basis is there for us to assume that Turkey is going to violate its international treaty obligations based on the testimony of your client, who is not even honest enough to be able to give his true name? Well, he was found credible by the immigration judge to begin with. To—again, that— I know. It's a matter of record, however, that he did claim to be somebody else with a made-up name. Yes, Your Honor. He did. In 1992, he did do that. That is correct, yes. But the—again, it's not for this court to resolve questions that were unresolved by the agency in the first instance. We would submit that, at the very least, the matter would warrant remand to the agency to make these determinations, whether or not this constitutes a claim for withholding or removal, whether or not there was sufficient evidence shown that he would be, in fact, returned to a place where he was found to have a fear of torture. All of those findings— Whether he would be returned by another country to those places. Correct. And those findings have not been made by the agency, even though the agency was raised of Mr. Bidas's fear of such actions by those countries. The BIA, on appeal, clearly thought that a claim for withholding of removal to Jordan and Turkey had not been made. That's their finding, yes. They made that finding, right? Yes, absolutely. And it had not been made. And so, we have some testimony here about how he might not stay, and a statement by counsel that the only place he can go is to the West Bank. But I'm just wondering if, in these proceedings, there's not an opportunity to say, we don't want to be sent—we want withholding of removal from these specific countries. Well, there's— Is that what happens at these hearings? Well, Your Honor, the form itself doesn't provide that opportunity. You said the form doesn't. It does not. And the immigration— You go to a hearing, and you have to give fair notice to the trier of fact what this is about. Don't you say, you know, we don't want—we want withholding of removal to blah, blah, blah countries. As a matter of practice, that's not something that I experience is usually done in these proceedings. But the other issue is that usually the immigration judge designates which country she will order removal to at the outset. She didn't do so. She usually does so. Correct. Before testimony. Is there a requirement that she does so? I do not believe there's a statutory requirement that she does so before testimony is taken. There is a statutory requirement that she does so. She did so in her written decision well after testimony had been taken, and at no point had either the government argued that he should be deported to Turkey or Jordan, nor had the immigration judge said, well, I intend on ordering his removal to Israel in the alternative to Turkey or Jordan. In fact, the first time she designated the countries of removal was in her written decision after testimony was taken. But again, to answer Your Honor's question, as a matter of course, I mean, that's not normally a question that's asked. It's more of the record being developed as a whole and where, for example, an evidence packet is submitted entitled Respondents' Right to Reside and Remain in Jordan, we would submit that is certainly sufficient to appraise the immigration judge of his fear of being returned to Jordan that would result in him being returned to the occupied territories. I do see I've gone well over my time. Thank you very much. You've been quite informative. Thank you both. We'll reserve decision.